ORDERED UNSEALED on 05/22/2026 s/

SEALED

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>FREDERICK JOSEPH JR. (1),<br>ROSEMARY JUDIZ (2),<br>Defendants. | Case No.: '26 MJ2975<br>COMPLAINT FOR VIOLATION OF:<br>Title 21, U.S.C., Sec. 841(a)(1) – Possession with Intent to Distribute PCP; Title 18, U.S.C., Sec. 2 – Aiding and Abetting; Title 18, U.S.C., Sec. 922(g)(1) – Felon in Possession of a Firearm |

The undersigned complainant being duly sworn states:

COUNT ONE

On or about July 19, 2025, within the Southern District of California, defendants FREDERICK JOSEPH JR. and ROSEMARY JUDIZ, did knowingly and intentionally possess with the intent to distribute PCP, a Schedule II Controlled Substance; in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

COUNT TWO

On or about July 19, 2025, within the Southern District of California, defendant FREDERICK JOSEPH JR., knowing he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess a firearm

that traveled in and affected interstate commerce; in violation of Title 18, United States Code, Section 922(g)(1).

SEAN DAVIS
SPECIAL AGENT, ATF

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 20th day of May 2026.

HON. DANIEL E. BUTCHER
UNITED STATES MAGISTRATE JUDGE

# PROBABLE CAUSE STATEMENT

On July 19, 2025, at approximately 8:00 a.m., members of the Regional Realignment Response Group, including Officers with the El Cajon Police Department, conducted a post-release community supervision (PRCS) compliance check at 4543 Logan Avenue, Apartment C (the "Residence"), which is within the Southern District of California. The subject of the compliance check was Frederick JOSEPH Jr. who was on PRCS after serving sentences for being a felon in possession of a firearm and possessing PCP for sale. FREDERICK's standard PRCS conditions authorized warrantless searches of his person, property, and Residence, among other conditions.

When Officers arrived at the Residence, they were met at the door by FREDERICK's father (F.J.SR), who let them into the Residence to complete the compliance check. FREDERICK was located in a bedroom of the Residence along with two two-year-old children and their mother, Rosemary JUDIZ. All occupants of the Residence were detained in the living room while the compliance check was conducted, including a search of the bedroom where JOSEPH  and JUDIZ were located.

A search of the bedroom where JOSEPH and JUDIZ were located revealed a pair of grey male sweatpants containing five vials filled with a yellowish liquid suspected to be PCP. Additionally, inside one of the bedroom dressers, Officers found a plastic grocery bag containing multiple clear vials with black lids, a small cardboard box containing many small, clear vials, a clear pipette, many small clear plastic pieces and many small black lids, and a small clear plastic bag containing approximately one-half pound of marijuana and an envelope addressed to "Frederick Joseph." Additionally, a pink and black sunglass case containing two droppers emitting a potent chemical smell consistent with PCP was sitting on top of the dresser.

Additionally, Officers located two locked combination safes on top of different dressers in the bedroom. Officers located a wallet with F.J.SR's identification card between the two dressers. Officers presented the safes to JOSEPH and JUDIZ while they were detained in the family room of the Residence. Officers asked them who the safes belong to,

and after looking at each other, JUDIZ responded that both of the safes were hers, and provided Officers the codes to open both safes. Inside the safes, Officers found, among several other items a loaded .22 caliber revolver, a .380 caliber semiautomatic Smith & Wesson handgun with an obliterated serial number and a compatible ammunition magazine, a small bottle of Motts apple juice that was approximately half full with a yellowish liquid consistent with the vials found in the male grey sweat pants and emitting a strong chemical smell consistent with the eye droppers found on top of one of the dressers, approximately $4,750 in cash, and a digital scale.

Lastly, in a plastic bin at the foot of the bed and in the closet of the room where JOSEPH and JUDIZ were located, Officers found some female clothing and a FedEx envelope addressed to Frederick L. Joseph and which contained three boxes of Federal brand .22 caliber ammunition. JOSEPH and JUDIZ were arrested for the items found in their bedroom and their cell phones were seized as evidence.

Before the Officers left, F.J.SR asked Officers if he could retrieve his money inside the safes. Because Officers had found a wallet with F.J.SR's identification between the dressers, they asked F.J.SR how much money was in the safes. F.J.SR told Officers he had a total of $500 (in $20 and $100 bills) in the safe, which was not close to the actual amount of approximately $4,750, so Officers kept the money as evidence.

During a post-arrest interview, JUDIZ told Officers the safes actually belonged to JOSEPH and that she knew he was on probation. JUDIZ stated she told Officers the safes were hers "[b]ecause that's what he (JOSEPH) told me to say." JUDIZ stated to Officers that JOSEPH had told her to claim the safes as hers "a couple months ago" and that they had been together for roughly a year. JUDIZ stated she did not know what was inside the safes and had never looked in them despite knowing the codes each safe. JUDIZ stated JOSEPH told her the codes so that if she was ever in danger she would "be okay."

JUDIZ's phone was searched pursuant to a warrant and communications between her and a phone number ending in 5019 subscribed to JOSEPH and with JOSEPH's picture as the profile picture. Messages between those accounts were consistent with the distribution

and possible use of drugs, including PCP, by JOSEPH and JUDIZ. For example, on January 17, 2025, after JUDIZ sent JOSEPH a picture appearing to be a drug test result testing positive for PCP, JUDIZ and JOSEPH exchanged messages about her exposure to PCP, spilling liquid, and failing to use gloves.







Similarly, messages on JUDIZ's phone shortly before the compliance check are consistent with her distributing drugs and receiving payment for JOSEPH. For example,

approximately five days before the compliance check JUDIZ was messaging someone JUDIZ referred to as "Sandra" about JUDIZ having a male's phone and doing his "tips" while he was gone. Investigators know "tips" to refer to drug sales, which is consistent with JUDIZ asking "Sandra" whether she would be paying with cash or electronically via CashApp.







Also, while messaging with "Sandra," JUDIZ explains she cannot talk because she has one of her children with her. This is further consistent with JUDIZ discussing a drug deal with "Sandra" and not wanting her daughter to hear any details.

Records checks on JOSEPH revealed the following relevant criminal history:

| Conviction Date | Court of Conviction | Charge | Imprisonment |
|---|---|---|---|
| 2/6/2003 | CASC – San Diego | Cal. H&S §11370.1—Possess Controlled Substance While Armed (Felony) | 4 Years Prison |
| 2/19/2008 | CASC – San Diego | Cal. P.C. §236—False Imprisonment (Felony) | 135 Days Jail; 3 Years Probation |
| 6/24/2009 | CASC – San Diego | Cal. H&S §11359—Possess Marijuana for Sale (Felony) | 180 Days Jail; 3 Years Probation |
| 5/17/2017 | CASC – San Diego | Cal. H&S §11379.5(a)—Transport PCP (Felony) | 4 Years Prison |
| 3/22/2023 | CASC – San Diego | Cal. H&S §11379.5(a)—Transport PCP (Felony) | 4 Years Prison |

The Smith and Wesson firearm was seized and inspected. Preliminary checks revealed that the firearm was not manufactured in California. Therefore, the firearm traveled in, and/or affected interstate commerce to arrive in the state of California.

Based on my training and experience, the suspected PCP seized from the bedroom shared by JUDIZ and JOSEPH is a distributable quantity. This conclusion is based upon a review of the totality of the evidence seized, which includes JUDIZ and JOSEPH's possession of a large quantity of cash along with drug distribution paraphernalia such as a scale and several small empty vials used to package PCP for distribution, a larger quantity of PCP in an juice bottle and eye droppers emitting a chemical smell consistent with PCP and being used to transfer PCP from the large bottle to the small vials, and text messages between JOSEPH, JUDIZ, and others consistent with PCP possession and drug distribution.

**REQUEST FOR SEALING**

It is further respectfully requested that this Court issue an Order sealing, until further

order of this Court, all papers submitted in support of this complaint, including the probable cause statement and arrest warrant. Sealing is necessary because premature disclosure of the contents of this probable cause statement and related documents may cause the defendant to flee and may cause destruction of evidence and may have a negative impact on this continuing investigation.